## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

REGINALD BROWN ET AL          CASE NO.  3:22-CV-00787

VERSUS          JUDGE TERRY A. DOUGHTY

CITY OF MONROE ET AL          MAG. JUDGE KAYLA D. MCCLUSKY

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 38] filed by Defendants, City of Monroe (the "City") and Police Chief Victor Zordan ("Zordan") (collectively, "Defendants"). Plaintiffs Reginald and Latoya Brown ("Plaintiffs" or "Brown") oppose the Motion [Doc. No. 44]. Defendants filed a reply [Doc. No. 49] to the opposition.

For the following reasons, Defendants' Motion is **GRANTED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this Section 1983 action on November 23, 2020, alleging that Brown was discharged from his employment with the Monroe Police Department ("MPD") in violation of his Fifth and Fourteenth Amendments Rights. Brown's wife Latoya is asserting a loss of consortium claim.[1] Plaintiffs bring these claims against the City and Zordan.[2]

Brown was terminated from his position for being untruthful during an investigation into why he waited until after the 2020 Monroe mayoral election to refer or open a criminal investigation into a police brutality case involving Timothy Williams ("Williams").[3] The Monroe Fire and Police Civil Service Board (the "Board") found that Brown violated policy and that the

---

[1] [Doc. No. 1-1]
[2] [Id.]
[3] [Doc. No. 38-1]

City had cause to "discipline" him, but it reduced his punishment to a 90-day suspension without pay.[4]

Defendants allege that Brown delayed the opening or referring of the criminal investigation of Williams' case in the hopes that his "preferred" candidate would win the mayoral election and, ultimately, would bolster Brown's own chances of becoming the full-time Chief of Police.[5] Apparently, when the incumbent lost the election, Brown allegedly repeatedly lied, including during a polygraph examination, about why he delayed the referral or opening of the investigation. Defendants argue that it cannot condone or employ officers whose integrity and truthfulness are compromised.[6]

The City of Monroe, as a municipality of the state of Louisiana, is within a classified civil service that protects its employees, such as Brown, from disciplinary action absent certain circumstances.[7] If a "classified employee" is removed (terminated) from the City, then that employee can demand a hearing and investigation by the Board, which determines the reasonableness of the action.[8] If a classified employee challenges an action, then the Board retains control of the action and resolves it by way of a hearing and an investigation.[9] The Board can either affirm the City's decision, or, if it determines that an action was not taken in bad faith or for cause, then the Board must order immediate reinstatement or reemployment.[10] Alternatively, the Board can modify an action, and the City must enforce any decision of the Board.[11]

---

[4] [Id.]
[5] [Id.]
[6] [Id.]
[7] La. Rev. Stat. 33 § 2475
[8] La. R.S. § 33:2501(A).
[9] [Id.]
[10] [Id.]
[11] [id.]

Brown was employed by the MPD as a Corporal, which is a mid-level rank within the MPD.[12] In February 2020, however, Brown became the Interim Chief of Police by then-Mayor James E. Mayo.[13] In July 2020, Brown was still serving in that position and admitted that he had hopes of being the permanent selection.[14]

On Monday, July 6, 2020, five days away from the mayoral election between Mayor Mayo and several other candidates, subordinate officers informed Brown of an event involving the misuse of force on a suspect in custody.[15] Brown, along with others, notified the City Attorney's office of the incident, and Brown placed the involved officers on administrative leave.[16] Brown claimed that he notified then-Mayor Mayo of the event and told Mayor Mayo that Brown was "immediately opening up a criminal and an administrative investigation."[17]

Despite Brown's claim that he was initiating a criminal and administrative investigation into the Williams' case, very little happened in the days after Brown learned of the incident.[18] Brown watched the video for the first time on July 7, 2020, and directed a Major to prepare an administrative (not criminal) write up for the involved officers.[19] There is no evidence that Brown took any similar action for the alleged criminal investigation.

Defendants assert that by Brown's own admission, nothing "really happened" to further criminal or administrative investigations on July 8.[20] According to Brown, on July 9, Brown was contacted by the City Attorney's office, who asked him to refer the criminal investigation to the

---

[12] [Doc. No. 38-4, p.8]
[13] [Id.]
[14] [Id.]
[15] [Id., pp. 13-14, 17]
[16] [Id., pp. 17-18]
[17] [Id.]
[18] [Id.]
[19] [Id., pp. 20-21]
[20] [Id.]

Louisiana State Police ("LSP").[21] Brown declined the referral because he claimed that there was already a criminal investigation open and because he could decline the advice of the City Attorney.[22]

The mayoral election occurred on Saturday, July 11, 2020, and the long-term incumbent, Mayor Mayo, lost the election. That next Monday, July 13, Brown allegedly had a change of heart (according to Brown, after he had time to "reflect" on the City Attorney's advice and "re-evaluate the decision") and decided to notify LSP of the incident.[23]

Brown did not provide detail for why so little action on his part occurred during the week of the investigation or why no steps were taken in the criminal investigation. MPD records show that a criminal investigation was not opened until at least July 13, 2022, two days after the mayoral election.

The City began conducting investigations of many officers involved in the excessive force incident. Brown was notified that he was the subject of an investigation into possible misconduct regarding the handling of the excessive force complaint, which included all aspects of his knowledge and handling of the complaint.[24] Prior to the start of the interview aspect of the investigation, Brown was provided with a "Police Officer's Bill of Rights and Waiver," which contained the following admonition:

> I also understand that I <u>MUST</u> answer all pertinent and or relative questions to this administrative investigation in a truthful manner. Any attempt to answer a question in a false manner could lead me to disciplinary action up to and including termination.[25]

---

[21] [Id., p. 21]
[22] [Id.]
[23] [Id.]
[24] [Doc. No. 38-5]
[25] [Id., p. 5]

delay sending the William's case to the LSP because of the mayoral election; and whether he delayed sending the William's case to the LSP because he did not want to send the William's case to the LSP before the mayoral election.[32]

Brown answered "No" to each question during the polygraph.[33] The Defendants assert that the polygraph examiner determined that Brown's responses to each of the above questions were deceptive.[34] A second polygrapher, Nate Gordon, also reviewed the polygraph results, and he used three methods of analyses, which all determined that Brown was "was not truthful concerning the relevant issues under investigation."[35]

Following the polygraph findings, the City issued Brown a pre-disciplinary letter on October 14, 2020.[36] The letter informed Brown that his inconsistent investigative decisions, which included his decision to reverse course and refer the investigation to the LSP after the mayoral election, seemed suspect.[37] Brown's pre-disciplinary hearing was held on November 5, 2020, before the newly appointed Chief, Victor Zordan.[38]

Prior to the hearing, Brown was issued a rights form specifying that he could be terminated for untruthfulness.[39] Brown was given the opportunity to defend himself and offer reasons for why the City should not act against him for the failed polygraph report.[40] Brown claimed that he answered the polygraph questions truthfully, disagreed that there were any inconsistencies in the investigation, and argued that he did not violate any policies.[41] Brown and his counsel offered

---

[32] [Id.]
[33] [Id.]
[34] [Id.]
[35] [Doc. No. 38-7, p. 8]
[36] [Doc. No. 38-8]
[37] [Id.]
[38] [Id.]
[39] [Id.]
[40] [Id.]
[41] [Id.]

several reasons why the polygraph results might be invalid: Brown was uncomfortable with the examiner because Brown thought he may have been "manipulating the device"; he was angry with the examiner for asking questions that he already answered; and polygraphs are unreliable in general.[42] Brown argued that there should be no discipline and that he should be immediately reinstated to his position.[43]

At the conclusion of the hearing, Zordan terminated Brown by letter dated November 23, 2020.[44] The reasons for termination were failing a polygraph; being untruthful at his interrogation; intentionally delaying the referral of the excessive force investigation; and delaying the referral for his personal benefit.[45]

Brown appealed his termination to the Board on December 3, 2020.[46] On appeal, Brown alleged that the MPD did not act in good faith and was arbitrary and capricious in investigating and terminating him.[47] The Board considered all evidence, and on March 17, 2022, the Board rendered its decision.[48] The Board found that that the MDP did act in good faith and for cause, but it determined that the punishment was not commensurate with the offense, and, as mentioned earlier, it reduced his punishment to a 90-day suspension without pay.[49]

Plaintiffs' opposition did not dispute these facts.[50]

The issues are briefed, and the Court is prepared to rule.

---

[42] [Id., pp. 9-14]
[43] [Id.]
[44] [Doc. No. 38-1].
[45] [Id., p. 13]
[46] [Doc. No. 38-4]
[47] [Id.]
[48] [Id.]
[49] [Id.]
[50] [Doc. No. 44]

## II.   LAW AND ANALYSIS

### A.  Motion for Summary Judgment

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both

8

parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

### 1.  Official Capacity Claims Against Individual Defendants

A suit against a municipal officer in his official capacity is simply another way of alleging municipal liability because a judgment in a § 1983 suit against an officer in his official capacity imposes liability against the entity he represents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018 (1978); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014). Therefore, "[w]hen . . . the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them." *Ferguson v. Gates*, 602 F.Supp.3d 942, 950 (W.D. La. 2022) (quoted source omitted); *Lehman v. Guinn*, Civ. Action No. 20-0736, 2021 WL 935887, at *10 (W.D. La. Feb. 9, 2021), *R&R adopted*, 2021 WL 929885 (W.D. La. Mar. 10, 2021); *Faul v. Fontenot*, Civ. Action No. 19-

1221, 2020 WL 4929358, at *3 (W.D. La. Aug. 4, 2020), *R&R adopted*, 2020 WL 4929323 (W.D. La. Aug. 21, 2020).

Plaintiffs here have named the City of Monroe as a defendant. The City of Monroe has instituted a "mayor-council" form of government. Under this, the elected mayor is the chief executive officer and head of the executive branch. Plaintiffs allege Mayor Ellis was acting on behalf of the City.

The claims Plaintiffs made against Chief Zordan, are one in the same as those claims they made against the City. Therefore, the official capacity claims against Chief Zordan are **DISMISSED WITH PREJUDICE**.

### 2. Vicarious Liability Under 42 U.S.C. § 1983

Brown alleges that the City and Zordan violated his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.[51] A suit against a government official in his official capacity is the equivalent to a suit against the government entity of which the official is an agent. While municipalities can be sued directly under § 1983, *Monell* establishes that they "cannot be found liable on a theory of vicarious liability or respondeat superior." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, at 694 (1978).  In other words, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *accord Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).  To overcome summary judgment on a municipal liability claim, a plaintiff must therefore "demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by

---

[51] [Doc. No. 1-1]

the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davis v. Tarrant County, Texas*, 565 F.3d 214, 227 (5th Cir. 2009).

Caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019).

Defendants assert that Plaintiffs are alleging no official policy of the City, so the Section 1983 liability rests upon the "final policymaking authority."[52] Plaintiffs oppose this, and they assert "Defendants allegations in their brief that Plaintiff did not allege an official policy and that section 1983 liability ensues upon 'final policy making authority is misplaced. Chief Zordan entire testimony centered around the City policy or custom regarding polygraphs and untruthfulness."[53] Plaintiffs claim that this creates a genuine issue of material fact, and that Defendants are therefore not entitled to summary judgment on this issue.[54]

Defendants have correctly established that there is an absence of a genuine issue of material fact in the record because Plaintiffs have failed to specify any sort of official policy of the City. Although Plaintiffs assert that this argument is "misplaced", they have still failed to show the Court what official policy Defendants have violated here.

---

[52] [Doc. No. 38-1]
[53] [Doc. No. 44, p. 11]
[54] [Id.]

Federal courts have consistently held that liability does not attach to a municipality when disciplinary action is subject to administrative review before a civil service board. It is undisputed that the Monroe Municipal Fire and Police Civil Service Board, not Defendants, is the final policy maker here. However, Brown only points his claims to Defendants for "intentionally infringing on his rights." In *Advanced Technology Building Solutions, LLC v. City of Jackson, Mississippi*, 817 F.3d 163, 167 (5th Cir. 2016), the United States Court of Appeals for the Fifth Circuit reaffirmed the Circuit's previous holdings that "[r]eview procedures are relevant to show someone 'is *not* a final policymaker.'" In *Advance Technology*, the plaintiff brought an action under section 1983 against the City of Jackson, alleging the mayor retaliated against him for exercising his First Amendment rights. The court held the mayor was not the final policymaker for the purposes of section 1983 liability because the city council had the final right of review of the mayor's decisions.

In *Metzler v. Kenner City*, Civ. A. No. 15-910, 2016 WL 5901886 (E.D. La. Oct. 11, 2016), the Eastern District of Louisiana relied on both *Praprotnik* and *Advanced Technology* and found that the City of Kenner was not subject to liability. In *Metzel*, the plaintiff sued the City of Kenner alleging that the mayor infringed on his First and Fourteenth Amendment rights. In *Metzler*, local law provided an avenue to appeal termination decisions to a civil service board. Like Brown in this case, the plaintiff in *Metzler* appealed his termination. The court concluded that the city was not liable for the actions of officials because the existence of a meaningful review by the Civil Service Board indicated that the city officials were not final policymakers. The civil service board in *Metzler* was authorized to make rules regarding employment and to review adverse employment decisions, just as the Monroe Municipal Fire and Police Civil Service Board is here. The *Metzler* court granted summary judgment.

12

In the instant case, Officer Brown enjoyed a property interest in his continued employment by virtue of his tenured civil service employment. Employees entitled to civil service protection may be removed by the appointing authority only under certain circumstances. Those circumstances include:

> (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
>
> (2) The deliberate omission of any act that it was his duty to perform.
>
> (3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
>
> (4) Insubordination.
>
> (5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
>
> (9) Falsely making a statement of any material fact in his application for admission to any test for securing eligibility or appointment to any position in the classified service, or, practicing or attempting to practice fraud or deception in any test.
>
> (14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
>
> (15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.[55]

As previously mentioned, if and when a classified employee is removed from the City, then that employee may demand a hearing and investigation by the Board to determine the reasonableness of the action.[56] The Board has complete charge of any such hearing and investigation and may conduct it in any manner it deems advisable.[57] After an investigation, the Board can either affirm the City's decision, or, if it determines that an action was not taken in good

---

[55] La. R.S. § 33:2500.
[56] La. R.S. § 33:2501(A).
[57] La. R.S. § 33:2501(B)(3).

13

faith or for cause, then the Board must order immediate reinstatement or reemployment.[58] Alternatively, the Board can modify an action, and the City must enforce any decision of the Board.[59]

Brown clearly availed himself of civil service protection by appealing his termination to the Board. The Board determined that there was just cause for disciplining Brown, but it ultimately disagreed with the MDP's decision to terminate Brown and ordered that he be reinstated. Defendants allege that the mere fact that reinstatement was ordered undermines Brown's theory of liability against the City.

Defendants also argue that even if Brown established that the individual Defendants made the decision to terminate him, this single decision would not make any of the individual Defendants a final policy maker or subject the City to liability because the Board provided meaningful review of the termination decision. To support this argument, Defendants state that the Board provided a months-long hearing process. During this process, Brown testified, cross examined witnesses, and introduced evidence in an effort to overturn his termination. Officer Brown does not deny that his appeal was heard by the Board, which made the final decision regarding his employment.

The Court agrees with Defendants. At the outset, Plaintiffs have failed to identify a specific policy that Defendants have violated. Accordingly, the analysis falls on "final policymaking authority" for an action that "performs the specific act that forms the basis of the § 1983 claim." Brown cannot establish his termination was done by Defendants acting as final policymakers. The Board provided meaningful review of the termination decision, and Defendants did not violate the final order of the Board to reinstate Brown. He has not provided any evidence that the Board

---

[58] La. R.S. § 33:2501 (C)(1).
[59] [Id.]

performed any acts that form the basis of this Section 1983 claim. Therefore, Plaintiffs' claims against the City are **DISMISSED WITH PREJUDICE**.

### 3. Qualified Immunity

Zordan argues that to the extent Plaintiffs assert any individual capacity claims against him, then he is entitled to qualified immunity.[60]

The doctrine of qualified immunity insulates government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is permitted to go to trial; thus qualified immunity questions should be resolved through summary judgment when the underlying facts are not in dispute. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

As indicated by *Saucier v. Katz*, 533 U.S. 194, 200 (2001), in determining whether qualified immunity applies, the first inquiry is whether a constitutional right would have been violated on the facts alleged. Only after deciding that question may a court turn to whether the right at issue was clearly established at the relevant time. While *Saucier*'s procedure is not an inflexible requirement, it is often beneficial to guide courts through this analysis (or something like this to kind of streamline it). *Pearson v. Callahan*, 555 U.S. 223, 2279 (2009).

In this case, following the *Saucier* procedure is appropriate. This Court begins with the question of whether a constitutional right would be violated on the facts alleged. The Court has found that there was no constitutional violation in this case. However, it will still analyze whether

---

[60] [Doc. No. 38-1]

the Defendants are entitled to qualified immunity if it were found that there was a constitutional violation here.

The inquiry requires analyzing the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This question is analyzed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. Police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id*. at 396-397.

The Court can decide one question or both under *Saucier. Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The dispositive question is whether the violative nature of the particular conduct is clearly established. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). That is because qualified immunity is inappropriate only where the officer had "fair notice" in light of the specific context of the case, not as a broad general proposition, that his particular conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The burden of proof in a Section 1983 action is on the plaintiff. The burden is heavy. A right is "clearly established" only if relevant precedent has placed the constitutional questions beyond debate. *Ashcroft v al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, Plaintiffs must establish that Zordan was personally involved in the alleged constitutional violation. Only direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).

While Brown's Complaint lacks any evidence of personal acts by Zordan that violated his constitutional rights, the case is clear that Zordan alone made the decision to terminate Brown.

16

Defendants argue that Zordan is still entitled to qualified immunity because under the totality of the circumstances, Zordan's actions were objectively reasonable.

The Court agrees with Defendants. Zordan's actions were reasonable. He followed all appropriate steps in his determination of what to do with Brown. A police officer should, at least in the course and scope of his work as an officer, be honest and trustworthy. The nature of what Brown was allegedly dishonest about was important in this case, i.e., postponing the investigation of police brutality for selfish gain. Zordan also allowed Brown the opportunity to explain himself, and he did not make a determination as to his employment until after hearing Brown's side of the story. Zordan did not partake in unlawful conduct, and his actions were that of a reasonable police officer.

Therefore, the Court finds that Zordan is entitled to qualified immunity against the procedural due process claim, and Plaintiffs' procedural due process claim is **DISMISSED WITH PREJUDICE.**

### 4. Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. Cty. of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993). "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adv., Inc. v. Regional Transit Auth.,* 489 F.3d 669, 673 n. 3 (5th Cir.2007) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)). Nonetheless, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected

property interest." *Texas v. Walker,* 142 F.3d 813, 819 (5th Cir.1998) (citing *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 223–26 (1985)). The fact that "reasonable minds could disagree on the propriety of [the plaintiff]'s termination" is insufficient to defeat a public official's qualified immunity against a substantive due process claim. *Id.* Rather, the plaintiff must show that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 215 (5th Cir.1999) (quotation marks omitted). The plaintiff must "demonstrate that the abuse of power by the state official shocks the conscience." *Marco,* 489 F.3d at 673 n. 3 (quotation marks omitted) (finding award of advertising contract to bidder other than lowest did not "shock the conscience," and thus did not establish violation of substantive due process).

Putting aside Brown's purported property interest in his employment, he has failed to identify a genuine dispute that his termination was arbitrary and capricious or that the decision made by Zordan was done without professional judgment. Brown's argument that the decision to terminate him was done in an effort to stop his promotion is unfounded, and the record clearly reflects that his termination had a basis in fact: he postponed an investigation into a serious police brutality incident, and then he was repeatedly dishonest while under investigation about his mistreatment of the Williams' case. His dishonesty was the stated basis for his termination, not his work performance or his ability to serve as police chief. Brown was told by the City Attorney exactly how to handle the Williams' matter, but he did not properly do so. Even when afforded the opportunity to explain his behavior at a hearing, Brown was dishonest. In light of his behavior, and considering the seriousness of the underlying facts of the case, i.e., police brutality, Brown's termination does not shock the conscience.

18

The Court finds that Brown cannot establish that his termination was arbitrary and capricious, and therefore, his substantive due process claim is **DISMISSED WITH PREJUDICE**.

### 5.   Latoya Brown's Loss of Consortium Claim

Latoya Brown joined this suit and makes a loss of consortium claim. The Court finds that this claim is not cognizable under Section 1983. Under Louisiana law, loss of consortium damages are derivative claims arising from a successful state law tort claim brought by a spouse. *Barras v. Garber*, Civ. A. No. 6:19-01411, 2020 WL 5755184, at *6 (W.D. La. Sept. 25, 2020). Latoya Brown's damage claim is inapplicable here because Brown has not asserted a state law tort claim. Additionally, the Fifth Circuit has held that a third party "may not assert a civil rights claim based on the civil rights violations of another individual." *Id.*; citing *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Circuit 1986)). While *Barker* was not a section 1983 case, *Coon* was a section 1983 case.

Because this claim is improperly before the Court, Latoya Brown's loss of consortium claim is **DENIED WITH PREJUDICE**.

### III.   CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants City of Monroe and Police Chief Victor Zordan's Motion for Summary Judgment [Doc. No. 38] is **GRANTED**. Plaintiffs Reginald and Letoya Brown's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

**MONROE, LOUISIANA,** this 8th day of November 2023.

_____
Terry A. Doughty
United States District Judge